298

## Fouts v. Brookline Building and
## Loan Association of Pittsburgh

*Charles E. McKossock,* for plaintiff.

*Joseph M. McClure,* for defendant, Brookline Building and Loan Association of Pittsburgh.

*Gerald W. Weaver,* for defendant State Capital Savings and Loan Association.

DOYLE, J., October 19, 1972.—On July 14, 1950, Charles F. Nuckles et ux. (Nuckles) purchased improved land in Allegheny County, Pa., (the land) and delivered his bond, to repay borrowed funds, with accompanying mortgage on the purchased land as security, to The Knights Life Insurance Company of America (Knights). After various mesne conveyances the land was conveyed, subject to the Knights mortgage, to William H. Floto et ux. (Floto) on March 3, 1955.

Upon Floto's default, Knights confessed judgment on the bond against Nuckles on November 4, 1957, at January term, 1958, D.S.B. no. 1195, and caused a writ of fieri facias to issue at January term, 1958, no. 262. Floto, although then in possession of the land, was not named as terre tenant in the praecipe for the writ of fieri facias nor in the writ itself, there being no legal requirement to so name him. However, "Directions to Sheriff " accompanying the writ of fieri facias which Knights lodged with the sheriff, contained the caption: "Knights v. Nuckles et ux. with notice to Floto, et ux. terre tenants." The body of the "Directions to Sheriff " did not direct the sheriff to personally serve the terre tenants.

The "Sheriff 's Return" contains proofs of newspaper advertisements published at the direction of the sheriff in connection with the proposed sale of the land. These advertisements contain the same caption as the previously outlined caption in Knights' "Directions to Sheriff." As is customary, no copies of the bulky printed handbills accompanied the return. The "Sheriff 's Return" of the writ certifies that ". . . after due public and timely notice by me given, according to law I did . . . on 2 December 1957 . . . expose the premises with-

in described to sale by public vendue or outcry, and then and there sold the same to Knights, for the sum of $256.95 . . . (taxes and costs) it being the highest and best bidder . . ."

After other mesne conveyances the land was conveyed to defendant Brookline Building & Loan Association of Pittsburgh (now South Pittsburgh Savings & Loan Association) (Brookline) which conveyed the land to plaintiff on November 2, 1965. Improvements on the land were destroyed by fire and on August 6, 1968, plaintiff submitted its written application to defendant State Capital Savings and Loan Association (State Capital) for a loan of $16,800 to reconstruct the destroyed improvements

In his written loan application plaintiff applied "for membership in . . . State Capital" and agreed "to abide by its Articles of Association, By-Laws, Rules and Regulations" and applied for the loan "in accordance with the By-Laws of the Association." The application also provided: "Notwithstanding an agreement of the Association to make this loan, it is understood that the same may be rejected by the Association . . . if, in the opinion of the Association, the examination of title discloses any condition unsatisfactory to the Association."

In its letter dated September 12, 1968, delivered to plaintiff, State Capital stated, inter alia: "We have this day granted your application for a mortgage loan of $16,800 . . . The application is granted, subject to Furnishing of Abstract of Title approved by the Association's Counsel."

Plaintiff avers, section 8 of complaint against Brookline, that "in reliance upon the acceptance of said mortgage application and the issuing of its mortgage commitment to plaintiff," plaintiff entered a construction agreement with Woodlawn Builders to reconstruct

the damaged improvements for $23,000 and paid the sum of $500 for architect's drawings.

Counsel for State Capital examined the title to the land and reported that a cloud existed by reason of an alleged defect in the Knights foreclosure proceedings; viz: failure to notify the terre tenant, and that judgments in the approximate sum of $4,500 in favor of two creditors of plaintiff were unsatisfied, all indicating that the loan would be a bad risk and might require institution of an action to quiet title to remove the cloud.

On October 15, 1968, State Capital notified plaintiff of examining counsel's findings and legal opinion and stated that no funds would be lent until the cloud was cleared. On October 28, 1968, plaintiff notified Brookline of State Capital's position, claiming that the warranties in Brookline's 1965 deed of conveyance to plaintiff require Brookline to remove the cloud.

State Capital By-Law, article VII, sec. 2, provides:

"The Board of Directors shall have the right to cancel the approval of any application for a mortgage loan . . . made by or on behalf of the Association, granting any such loan if final settlement therefor is not made by the borrower within sixty days after such approval."

Accordingly, on March 13, 1969 State Capital delivered to plaintiff a letter containing the following:

"We have this day been advised that the above mentioned property has a defective title and that litigation is probable. In view of this fact and the time which will be involved to clear the matter, we have no alternative but to cancel the above commitment in accordance with Article VII, Section 2 of the Association's By-Laws, a copy of which is enclosed.

"We regret this action, however, if and when a

*clear title is obtained and we can be of service to you,* please contact our representative, Mr. Herbert C. Baum, Jr."

On August 4, 1971, plaintiff filed his complaint against both defendants. He asserts (section 15 [sic] of complaint against State Capital) that State Capital breached its loan commitment and is liable to him for $4,600 in increased construction costs plus increased interest costs in the sum of $7,000 plus $1,500 for additional living expenses or a total of $13,100. He asserts (section 5 of complaint) that defendant Brookline breached the general warranty contained in its deed of conveyance and demands the same amounts for the same items from Brookline and, in addition, demands $1,500, the alleged cost of removing the cloud, or a total sum of $14,600. No allegation of bad faith or negligence against either defendant is contained in the complaint.

Brookline demurs to the complaint as amended, claiming that the foreclosure proceedings conducted by Knights v. Nuckles complied with the Act of July 22, 1919, P. L. 1089, 45 PS §81, and then extant Common Pleas Court Rule No. 32a. Brookline also asserts that plaintiff and his predecessors in title have enjoyed quiet and peaceable possession of the land for more than six years and, therefore, cannot successfully collaterally attack the deed of conveyance dated December 18, 1957 based on the sheriff's sale conducted as above, for want or proof of proper legal notice, citing the Act of March 26, 1785, 2 Sm. L. 299, sec. 7, as amended by the Act of July 8, 1885, P. L. 270, sec. 1, 12 PS §76.

State Capital moves for summary judgment under *Pennsylvania Rule of Civil Procedure* 1035, attaching loan application, the affidavit of its title-examining counsel, its bylaws and its letter of commitment dated September 12, 1968.

## PLAINTIFF v. BROOKLINE

Plaintiff asserts (section 6 of complaint) that at the time Brookline conveyed to him, the land was "subject to the lawful encumbrance, claim, right or interest belonging to . . ." Floto because of the failure of Knights to inform Floto, the terre tenant during 1957, of its 1957 execution and sale "in accordance with mortgage foreclosure statutes and procedures."

The Act of July 22, 1919, supra, applicable during 1957, provided, inter alia:

"The notice required to be given by the sheriffs . . . of all judicial sales of real estate . . . shall be by printed handbills, [containing, inter alia] the names of the owners or reputed owners of the land to be sold, . . . said handbills [to] be posted [as required by local rule] . . . and also by publication of a similar notice [in newspapers] . . ."

First Federal Savings and Loan Association of Greene County v. Porter, 408 Pa. 236 (1962), interpreting the Act of July 22, 1919, states at page 243: "This statute provided that the notice of such a sale should be given by posting [printed handbills], *plus* newspaper advertisements, . . . [including the name of the terre tenant] . . ." However the same opinion as page 244 holds:

". . . in the absence of actual notice to the [terre tenant] . . . the failure to include in the handbills *or* in the newspaper advertisements the name of the [terre tenant] vitiated the proceedings and sale . . ." (Italics supplied.)

The disjunctive "or" in the last quotation supra does not mean that the name of the terre tenant need not be included in *both* the handbills *and* the newspaper advertisements, since such an interpretation would contradict the plain mandate of the statute. Cf. Pa. R. C. P. 3129 for the present practice.

The documents filed at the 1957 execution proceedings are a part of this record, having been incorporated by plaintiff in section 6 of his complaint. Those documents include proofs of publication of newspaper advertisements of the execution and proposed sale naming Floto et ux. as terre tenants. It was not the practice then, nor is it now, to include a copy of the bulky printed handbills with the sheriff's return since the quoted language of the return certifies that the sheriff conducted the sale "after due and timely notice by me given, according to law . . ."

"According to law" meant "according to the Act of 1919," supra. The sheriff's return may not be collaterally attacked at this time: Art Novelty Manufacturing Co., Inc. v. Kenworthey, 370 Pa. 471 (1952). We note that in Greene County, supra, the petition to set aside the sale was filed prior to delivery of the sheriff's deed. We must assume that the handbills properly named the terre tenants. Additionally, where land sold by the sheriff has been quietly and peaceably held for more than six years after the sheriff's deed has been delivered to the purchaser, the deed may not be avoided ". . . for want of proof that due and legal notice of the sales of the same was given . . .": Act of March 26, 1785, supra.

Accordingly, proper notice was given to Floto et ux. and the 1957 sale was and is valid and subsisting. Brookline did not breach the warranty in its deed of conveyance to plaintiff. An appropriate order will be entered.

## PLAINTIFF v. STATE CAPITAL

Plaintiff argues that if the sheriff's sale was valid he must be permitted to recover against State Capital, since its title-examining counsel's opinion was based on his erroneous assertion that the sale was defective.

With respect, we cannot agree. The application for the loan contained the language "notwithstanding an agreement . . . to make this loan . . . the same may be rejected . . . if, in the . . . opinion of (State Capital), the examination of the title discloses any condition unsatisfactory to (State Capital)." The Bylaws provide that "The Board of Directors shall have the right to cancel the approval of any application for a mortgage loan if . . . final settlement . . . is not made by the borrower within sixty days after such approval." The letter of commitment was made subject to "furnishing of Abstract of Title approved by (State Capital) Counsel."

In fact, State Capital's counsel did not approve the abstract of title because, in his opinion, it disclosed a condition unsatisfactory to him which he believed constituted a bad risk. He may have concluded, in a moment of over caution, that the language of Greene County, supra, was ambivalent and confused the law relating to notice to terre tenants.

Plaintiff argues that if no defect existed in the title, then State Capital was obligated to lend the money. But counsel had advised State Capital that a defect *did* exist and that litigation would be required to correct the defect. Clearly, at that juncture, a "condition unsatisfactory to . . . (State Capital)" had been disclosed. And on October 15, 1968, State Capital notified plaintiff of the unsatisfactory condition and advised plaintiff that until the cloud was cleared no money would be lent. There being no allegation of bad faith or negligence, State Capital's position was both legally proper and commercially prudent. The fact that four years later, in the present litigation, title-examining counsel's opinion is judicially overruled, is irrelevant.

Where a contract to lend money is made subject to the satisfaction of the lender and the lender, relying

on competent counsel's advice that the security for the loan is defective, refuses in good faith to lend the money and later rejects the application for the loan, the borrower may not recover in assumpsit against the lender. A condition in a contract must be fulfilled by the party upon whom it is imposed or waived by the other party or judicially excused. Here, the condition was neither fulfilled nor waived and no reason has been advanced to excuse fulfillment.

Even assuming a breach of the commitment contract, plaintiff's alleged damages do not flow from that breach. Plaintiff changed his position at a time when he had not ascertained whether the condition in the contract had been fulfilled. His own imprudence caused his misfortune. He was drawing against uncollected funds and assumed the risk of collection.

An appropriate order will be entered.

## ORDER

And now, October 19, 1972, the demurrer of Brookline Building & Loan Association of Pittsburgh, a corporation, is sustained and plaintiff's complaint as to it is dismissed.